# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROLYN GREENE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,<br><br>Defendants. | 1:03-cv-12628 (NG)<br><br>RELATED ACTIONS:<br>1:04-cv-10046 (NG)<br>1:04-cv-10055 (NG)<br>1:04-cv-10065 (NG)<br>1:04-cv-10077 (NG)<br>1:04-cv-10078 (NG)<br>1:04-cv-10090 (NG)<br>1:04-cv-10144 (NG)<br>1:04-cv-10155 (NG)<br>1:04-cv-10179 (NG)<br>1:04-cv-10189 (NG)<br>1:04-cv-10190 (NG)<br>1:04-cv-10202 (NG) |
| JOHN G. ESPOSITO, JR., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,<br><br>Defendants. | 1:04-cv-10013 (NG) |
| JOSEPH L. KING, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOPURE CORPORATION, THOMAS A. MOORE, CARL W. RAUSCH, and RONALD F. RICHARDS,<br><br>Defendants. | 1:04-cv-10038 (NG) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE HOMEYER GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL**

William E. Homeyer, Jr., William Kim, Gernot Buerger, Thomas Echlin, and Richard M. Acuna (collectively, the "Homeyer Group" or "Movants") hereby move this Court for entry of an order: (1) consolidating the above-captioned actions (the "Actions"), (2) appointing Movants Lead Plaintiff in the Actions, and (3) approving Movants' selection of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Rabin, Murray & Frank LLP ("Rabin Murray") as Co-Lead Counsel, and Moulton and Gans, P.C. ("Moulton & Gans") as Liaison Counsel.

## PRELIMINARY STATEMENT

As of February 27, 2004, there were fifteen related class action lawsuits pending in this District brought on behalf of persons who purchased or otherwise acquired securities of Biopure Corporation ("Biopure" or the "Company") between March 17, 2003 and December 24, 2003 (the "Class Period"). These Actions are brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5 promulgated thereunder. Defendants are Biopure and certain of its officers and directors. Class members sustained significant losses as a result of the alleged fraud.

Pursuant to the PSLRA, prior to selecting a Lead Plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court is to appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest in the litigation of those seeking such appointment and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

The Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). The Homeyer Group should be appointed as

Lead Plaintiff because it: (1) timely filed a motion for appointment as lead plaintiff; (2) with an estimated loss of $185,298.28 in Biopure securities during the Class Period, the Homeyer Group has the largest financial interest in this litigation of any plaintiff or lead plaintiff movant of which movants are aware; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). The Homeyer Group's selection of Milberg Weiss and Rabin Murray to serve as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel should be approved because, pursuant to the PSLRA, the Homeyer Group, as the presumptive Lead Plaintiff, selects counsel. Milberg Weiss, Rabin Murray, and Moulton & Gans have extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class members.

## STATEMENT OF FACTS[1]

The complaints allege that before the Class Period, Biopure submitted a biological license application ("BLA") to the Food and Drug Administration ("FDA") seeking approval to market in the Untied States the Company's leading product, Hemopure®, an alternative treatment to blood transfusions for adult anemic patients undergoing orthopedic surgery ("orthopedic surgery indication"). Defendants submitted with the BLA adverse data from its Phase III clinical studies in the orthopedic surgery indication, yet concealed such information from the investing public. Subsequently, in September 2002, the Company received a grant from the U.S. Department of the Army to conduct clinical trials of Hemopure® for the treatment of trauma patients ("trauma indication"). Defendants submitted a "trauma study protocol" to the FDA in March 2003 in connection with its plans to conduct a Phase II clinical trial of Hemopure® for the trauma indication.

---

[1] These facts are derived from the allegations in the complaint captioned *King v. Biopure Corp., et al.*, No. 1:04-cv-10038 (Gertner, J.) (D. Mass. filed on Jan. 8, 2004) ("the *King* Complaint").

Unbeknownst to investing public, as early as March 2003, the FDA informed defendants that the Phase II trauma study protocol could not go forward, citing "safety concerns" arising from adverse event data submitted as part of the Company's BLA for the Hemopure orthopedic surgery indication. This also put defendants on notice that FDA approval of Hemopure, if any, for the treatment of anemic orthopedic surgery patients was in serious jeopardy and would be delayed beyond June 1, 2003--the date by which defendants had estimated obtaining FDA approval. It was not until after the market closed on December 24, 2003, the last day of the Class Period, that defendants revealed in a press release that Biopure had received a Wells Notice from the SEC, indicating the staff's intent on recommending to the Commission that civil injunctive proceedings be brought against the Company. In the release, defendants stated that they believed the notice was related to the Company's lack of disclosures regarding its communications with the FDA about the trauma study protocol of Hemopure® and the BLA. Further, defendants shocked the market when they disclosed in the same release that the FDA had halted further clinical trials of Hemopure® for the trauma indication due to safety concerns arising from the BLA and accompanying adverse data from the orthopedic surgery indication submitted therewith. Defendants also stated that they would respond to the FDA's concerns by mid-2004, thereby delaying the commercial release of Hemopure® in the United States, if at all, beyond the mid-2003 target date defendants had previously stated. On the first trading day following Biopure's announcements, the price per share of the Company's common stock fell over 13.8% from its previous trading day's closing price to close at $2.43 per share on unusually high trading volume.

During the Class Period, defendants failed to disclose any of these adverse facts to the investing public, and materially misled investors concerning the commercial viability of

Hemopure® in the United States and the date by which marketing of Hemopure® would commence, resulting in the artificial inflation in the price of Biopure's securities. Defendants were motivated to create such favorable conditions for Biopure's securities to complete three offerings of the Company's common stock during the Class Period, generating over $51.3 million in total proceeds. In addition, during the Class Period, certain of Biopure's officers and/or directors capitalized on the artificial inflation of the Company's securities by selling their own shares and reaping proceeds of nearly $4.3 million.

## ARGUMENT

### POINT I.

### THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The Actions assert class claims on behalf of the purchasers of Biopure securities for alleged violations of the securities laws during the Class Period. The Actions name common defendants and involve the same factual and legal issues. They are each brought by investors who purchased shares of Biopure during the Class Period pursuant to the materially false and misleading statements which artificially inflated the price of Biopure securities. Consolidation is appropriate where there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42 (a). *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is readily met here and, accordingly, the Actions should be consolidated.

### POINT II.

### MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF

A. **The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff

- 5 -

class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action captioned *Greene v. Biopure Corp.*, No. 1:03-cv-12628 (D. Mass. filed on Dec. 30, 2003), caused notice to be published on the *PR Newswire* on December 30, 2003.[2] Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice...
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the

---

[2] A copy of this notice is attached as Exhibit A to the Declaration of Peter E. Seidman, submitted contemporaneously herewith ("Seidman Decl."). The national news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire services." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

class; and otherwise satisfies the requirements of Rule 23 of the

(cc) Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii). *See generally Greebel*, 939 F. Supp. at 64.

### B. Movants Satisfy The "Lead Plaintiff" Requirements Of The PSLRA

#### 1. Movants Have Complied With The PSLRA And Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on March 1, 2004. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on December 30, 2003), Movants timely move this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

Movants have each duly signed a certification stating that they have reviewed the complaint and are willing to serve as representative parties on behalf of the class. *See* Seidman Decl., Exhibit B (attaching certifications of the Homeyer Group). In addition, Movants have selected and retained competent counsel to represent them and the class. *See* Seidman Decl. Exhs. D-F (attaching firm resumes of Milberg Weiss, Rabin Murray, and Moulton & Gans). Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff and their selection of Milberg Weiss and Rabin Murray to serve as Co-Lead Counsel, and Moulton & Gans to serve as Liaison Counsel approved by the Court.

#### 2. Movants Have The Requisite Financial Interest In The Relief Sought By The Class

During the Class Period, as evidenced by the certifications signed by or on behalf of each member of the Homeyer Group (*see* Seidman Decl. Exhibit B) and analysis of their transactions

in Biopure securities (*see* Seidman Decl. Exhibit C), the Homeyer Group has suffered losses of $185,298.28. Upon information and belief, the Homeyer Group's financial interest in this matter is the largest of any competing lead plaintiff movant. Therefore, the Homeyer Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B). *See Schulman*, 2003 U.S. Dist. LEXIS 10348, at *12 (appointing movant group with the largest financial interest as lead plaintiff.).

### 3. Movants Otherwise Satisfies Rule 23

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy -directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Lax v. First Merchants*, 1997 U.S. Dist. LEXIS 11866 at *20; *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ -T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997). Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

Movants satisfy this requirement because, just like all other class members, they: (1) purchased or otherwise acquired Biopure securities during the Class Period; (2) purchased Biopure securities at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding Movants' adequacy to represent the class to the existence of any conflicts between their interests and the

interests of the other members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed lead plaintiff and the class members and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (lst Cir. 1985)).

Here, Movants are adequate representatives of the class. As evidenced by the injury suffered by them as a result of acquiring Biopure shares at prices artificially inflated by defendants' materially false and misleading statements, Movants' interests are clearly aligned with those of other class members, and there is no antagonism between Movants' interests and those of the other members of the class. In addition, as shown below, Movants' proposed Lead Counsel and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### POINT III.

### MOVANTS' CHOICE OF CO-LEAD COUNSEL AND LIAISON COUNSEL SHOULD BE APPROVED

Movants have selected Milberg Weiss and Rabin Murray to serve as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel, subject to Court approval. Milberg Weiss, Rabin Murray, and Moulton & Gans possess extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Milberg Weiss has been appointed as lead or co-lead counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case, and *In re Enron*

*Corporation Securities Litigation,* 235 F. Supp. 2d 549 (S.D. Tex. 2002), which is one of the largest securities class action lawsuit ever.[3] Rabin Murray is also experienced in litigating securities class actions, has successfully represented plaintiffs in securities class actions numerous times before this Court and will more than adequately represent the interests the class as Co-Lead Counsel. *See* Seidman Decl. Exs. D-F (attaching firm resumes).

## CONCLUSION

For the foregoing reasons, the Homeyer Group satisfies the PSLRA's requirements for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B). Movants respectfully requests that this Court: (1) consolidate the actions presently pending in the District of Massachusetts; (2) appoint them as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve its selection of Milberg Weiss and Rabin Murray as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel.

DATED: March 1, 2004

Respectfully submitted,

MOULTON & GANS, P.C.

By: Nancy Freeman Gans *(auth)*
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA 02109-4216
Telephone: (617) 369-7979

*Proposed Liaison Counsel*

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail (by hand) on 3/1/04
Nancy Freeman Gans *(auth)*

---

[3] *See also In re Advanced Tissue Scis. Sec. Litig.,* 184 F.R.D. 346, 352 (S.D. Cal. 1998) (Milberg Weiss qualified to serve as lead counsel); *Chill v. Green Tree Fin. Corp.,* 181 F.R.D. 398, 403, 413-15 (D. Minn. 1998) (same); *In re Donnkenny, Inc. Sec. Litig.,* 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (same); *Holley v. Kitty Hawk, Inc.* 200 F.R.D. 275, 282 (N.D. Tex. 2001) (same); *Greebel v. FTP Software,* 939 F. Supp. at 64 (same).